IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

| | |
|---|---|
| SUSAN SUMMER DURHAM,<br>as Widow and Administratrix of the<br>Estate of Christopher Durham and on<br>behalf of the Wrongful Death Beneficiaries<br>of CHRISTOPHER DURHAM, deceased,<br><br>    Plaintiffs,<br>and<br><br>STONETRUST COMMERCIAL<br>INSURANCE COMPANY and MAPLE<br>LAND AND TIMBER, LLC,<br><br>    Intervenors,<br>v.<br><br>ESTATE OF GUS LOSLEBEN,<br>DECEASED, by and through the Estate's<br>Administrator, Lloyd Tatum, Esq.; HARDIN<br>COUNTY FIRE DEPARTMENT; HARDIN<br>COUNTY, TENNESSEE; and<br>JOHN DOES 1-10,<br><br>    Defendants. | No. 16-1042-STA-egb |

---

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
### ORDER DISMISSING INTERVENOR COMPLAINT

---

Before the Court is Defendants Estate of Gus Losleben, Hardin County Fire Department ("Fire Department"), and Hardin County, Tennessee ("Hardin County")'s Motion to Dismiss (ECF No. 6) filed on March 9, 2016. Plaintiff Susan Summer Durham has responded in opposition, and Defendants have replied. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

## BACKGROUND

Plaintiff's Complaint alleges claims for federal civil rights violations under 42 U.S.C. § 1983 and state law negligence and negligence per se claims under the Tennessee Governmental Tort Liability Act ("TGTLA"). Plaintiff initially filed her Complaint in the Hardin County Circuit Court on December 30, 2015. Defendants removed the case to this Court on March 3, 2016. The Court subsequently granted Plaintiff's motion to remand her state law claims to state court but denied her request to remand her § 1983 claims. On June 9, 2016, Stonetrust Commercial Insurance Company and Maple Land and Timber, LLC filed an Intervenor Complaint (ECF No. 34). Defendants' motion to dismiss (ECF No. 37) the Intervenor Complaint followed on June 23, 2016, and remains pending before the Court.

According to the Complaint, Christopher Durham ("Plaintiff's decedent") was traveling northbound in a log truck in Hardin County, Tennessee on December 9, 2014. (Compl. ¶ 9.) Gus Losleben, a Fire Department employee, was driving a fire truck southbound on the same road. (*Id.*) Losleben crossed into the decedent's lane, colliding head-on with his truck, and both men were killed. (*Id.* ¶ 10.) The Complaint alleges that at the time of the collision, Losleben was not responding to any "fire service emergency," he was driving the truck at an excessive rate of speed, he was aware that the call he was responding to did not require him to drive at a high speed, and he crossed into the decedent's lane. (*Id.* ¶ 11.) According to Plaintiff, "[the decedent] was killed as a result of said negligence, willful, wanton, reckless and/or deliberately indifferent acts or omissions on the part of Losleben." (*Id.* ¶ 13.)

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However, legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

The Court holds that Plaintiff has failed to state a claim for relief under federal law as to any Defendant. The Court will analyze the merits of the pleadings as to each Defendant separately.

**I. Hardin County Fire Department**

The Court first considers Defendants' contention that the Fire Department should be dismissed because it is not an entity capable of being sued. Plaintiff did not actually respond to this argument and therefore waived the issue. On the merits, 42 U.S.C. § 1983 creates liability for "municipalities and other local government units." *Monell*, 436 U.S. at 690. Courts have concluded, however, that a police or sheriff's department is generally not an entity capable of being sued under the statute. *See Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) (holding that, under Ohio law, a sheriff's office is not an entity capable of being sued). Although the Sixth Circuit has never squarely decided the issue under Tennessee law, federal courts sitting in Tennessee have consistently held that plaintiffs cannot maintain actions against Tennessee police and sheriff's departments under § 1983. *See, e.g.*, *McKinney v. McNairy Cnty., Tenn.*, 1:12-CV-01101, 2012 WL 4863052, at *3 (W.D. Tenn. Oct. 11, 2012); *Newby v. Sharp*, 3:11-CV-534, 2012 WL 1230764, at *3 (E.D. Tenn. Apr. 12, 2012); *Mathes v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-CV-0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010). Other courts have applied this same reasoning when dismissing municipal fire departments from suits brought under § 1983. *See Lathan v. City of Cleveland*, No. 1:12 CV 37,

2012 WL 1708762, at *2 (N.D. Ohio May 15, 2012); *Hicks v. City of Barberton*, No. 5:11cv76, 2011 WL 3022089, at *2 (N.D. Ohio July 22, 2011). Even if Plaintiff had not waived the issue, the Court holds that the Fire Department is entitled to dismissal of the claims against it. Defendants' Motion is **GRANTED**, and the Fire Department is dismissed as a party to this action.

## II. Statute of Limitations

Defendants next argue that Plaintiff filed her Complaint outside the applicable statute of limitations. According to the pleadings, the collision giving rise to Plaintiff's claims occurred on December 9, 2014. Plaintiff filed her Complaint in state court on December 30, 2015. A motion to dismiss on statute of limitations grounds should be granted when "it is apparent from the face of the complaint that the limit[ations period] has passed." *Howell v. Farris*, 655 F. App'x 349, 350 (6th Cir. 2016) (quoting *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 520 (6th Cir. 2008)). State law governs the statute of limitations for a claim under § 1983, and in Tennessee the applicable statute of limitations is one year. *Id.* (citing Tenn. Code Ann. § 28-3-104(a)). While federal courts look to state law for tolling rules, *Wallace v. Kato*, 549 U.S. 384, 394 (2007), federal standards determine when the claim accrues. *Id.* at 388. The Sixth Circuit has held that "[g]enerally, the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 606 F.3d 301, 307 (6th Cir. 2010) (internal quotation marks omitted). Stated differently, courts have "looked to what event should have alerted the typical lay person to protect his or her rights." *A to Z, Inc. v. City of Cleveland*, 281 F. App'x 458, 460 (6th Cir. 2008) (quoting *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000)).

5

Applying these principles to this case, the Court holds that Plaintiff's § 1983 claims accrued on December 9, 2014, which means the one-year statute of limitations ran on December 9, 2015. Plaintiff did not file her Complaint until December 30, 2015. Plaintiff must therefore show that the limitations period was tolled in order to avoid the dismissal of her claims against the remaining Defendants. Plaintiff relies on Tenn. Code Ann. § 28-1-110, which provides as follows:

> The time between the death of a person and the grant of letters testamentary or of administration on such person's estate, not exceeding six (6) months, and the six (6) months within which a personal representative is exempt from suit, is not to be taken as a part of the time limited for commencing actions which lie against the personal representative.

"This Section has the effect of suspending, or tolling, the statute of limitations for that period of time between the death of a person and the appointment of a representative of his estate, up to a period of six months." *Carpenter v. Johnson*, 514 S.W.2d 868, 869 (Tenn. 1974); *see also Liput v. Grinder*, 405 S.W.3d 664, 672 (Tenn. Ct. App. 2013) (explaining that section 28-1-110 tolls the statute of limitations for actions against the estate of a deceased tortfeasor).

Here Losleben, the alleged tortfeasor, died on the date of the collision—December 9, 2014. Therefore, pursuant to Tenn. Code Ann.§ 28-1-110, the statute of limitations for an action against his estate was tolled until a personal representative was appointed for a period of up to six months. According to Plaintiff, Losleben's personal representative was appointed on May 12, 2015. The six-month tolling period ran on May 9, 2015, meaning the one-year statute of limitations for Plaintiff's § 1983 claim began to run on that date and expired May 9, 2016. Therefore, the Court concludes that Plaintiff's Complaint against the Estate of Losleben filed on

December 30, 2015, was timely. Defendants' Motion to Dismiss on statute of limitations must be denied then as to the Estate of Losleben.

Nevertheless, the Court holds that Plaintiff's § 1983 claim against Hardin County were filed outside of the one-year statute of limitations and no tolling applies to save the claim. Plaintiff seems to argue that her claims against Hardin County did not *accrue* until the date that a personal representative was appointed for Losleben's estate. *See* ECF No. 13 at PageID 144. Plaintiff contends then that her claims against Hardin County were tolled so long as her claims against Losleben's estate were tolled. In Plaintiff's view, her claim accrued against Hardin County only when she had "'a complete and present cause of action,' that is, 'when the plaintiff can file suit and obtain relief.'" (*Id.* quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007).) However, Plaintiff cites no authority for her proposition that the action accrued against Hardin County on the date that a personal representative was appointed rather than the date that the injury occurred.

Plaintiff argues elsewhere that under principles of *respondeat superior* her claims against Hardin County were tolled until a personal representative was appointed for Losleben's estate. Plaintiff states in her brief that "in the context of vicarious liability claims, it is axiomatic that vicarious liability of a principal is wholly dependent on the acts of its agent." ECF No. 12 at PageID 106. Plaintiff goes on that "the statute of limitations on a claim against an employer premised upon vicarious liability for the acts of an employee cannot expire against the employer before it expires against the employee." *Id.* Plaintiff's argument overlooks the well-settled law that a municipality, including a city or county governmental entity, will not be liable simply because it employs the alleged tortfeasor. *See Bd. of Cnty. Comm'rs of Bryant Cnty., Okla. v.*

7

*Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 426 U.S. 658, 694 (1978)). Courts "have consistently refused to hold municipalities liable under the theory of *respondeat superior*." *Id.* The Court is not persuaded then that a Tennessee Code provision specifically applicable to deceased tortfeasors somehow extends to toll a section 1983 action against the tortfeasor's governmental employer. Because the underlying action accrued on December 9, 2014, the statute of limitations for Plaintiff's federal civil rights claim against Hardin County expired on December 9, 2015. Plaintiff's Complaint against Hardin County was untimely. Therefore, Defendants' Motion to Dismiss on statute of limitations is **GRANTED** as to Hardin County.

**III. 42 U.S.C. § 1983**

This leaves only Plaintiff's § 1983 claim against the Estate of Losleben. Plaintiff alleges that Losleben's Estate is liable for violations of Plaintiff's decedent's rights under the federal constitution. Plaintiff specifically alleges that Losleben, a Fire Department employee, violated the decedent's "rights, privileges and immunities under the United States Constitution and the Fourteenth Amendment thereto to be free from bodily harm, injury or death." Losleben operated the fire truck in a manner that exhibited a "reckless disregard for the safety of others" based on the speed at which he was driving the truck, his failure to maintain a proper lane of traffic, failure to maintain a proper lookout, failure to yield the right of way, and failure to maintain proper control of the fire truck he was operating.

Section 1983 was enacted to "protect[] citizens from violations of their federal rights by state officials." *Bradley v. Reno*, 749 F.3d 553, 558 (6th Cir. 2014). "Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established

elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)). To invoke these remedies, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)). Plaintiffs may bring § 1983 claims against public officials acting in their individual capacities. A "plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) internal quotation marks omitted).

The Due Process Clause of the Fourteenth Amendment prohibits state and local governments from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. The clause contains both procedural and substantive guarantees. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 1635 (2013). Procedural due process generally provides that "government action depriving a person of life, liberty, or property . . . must . . . be implemented in a fair manner." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see also EJS Props.*, 698 F.3d at 855. Substantive due process, on the other hand, "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *Salerno*, 481 U.S. at 746) (internal alterations and quotation marks omitted). In this case the Complaint does not allege the violation of the decedent's procedural due process or that he should have been afforded greater procedural safeguards. Plaintiff's

9

Fourteenth Amendment claim is therefore a substantive due process claim. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) (noting that a "claim is one invoking the substantive . . . component of the Due Process Clause [where] petitioners do not claim [a lack of] . . . appropriate procedural safeguards"); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (noting that a procedural due process claim requires a showing that "the state did not afford [the plaintiff] adequate procedural rights prior to depriving him of [a protected] interest").

Substantive due process protects against "governmental power . . . being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)) (internal alterations omitted). Courts must, however, "carefully scrutinize so-called substantive due process claims brought under § 1983 because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 452 (6th Cir. 2002) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)) (internal quotation marks omitted). When a plaintiff brings a claim against an executive government official, the action will be found to violate substantive due process "only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992)). "[O]nly the most egregious official conduct" violates substantive due process under this standard. *Id.*

The standard for determining whether state action "shocks the conscience" is "'no calibrated yard stick.'" *Ewolski*, 287 F.3d at 510 (quoting *Lewis*, 523 U.S. at 847). "At one end of the spectrum, 'the standard requires a showing beyond mere negligence." *Caldwell v. City of Louisville*, 120 F. App'x 566, 574 (6th Cir. 2004) (quoting *Ewolski*, 287 F.3d at 510). In other words, "[m]ere negligence cannot be said to shock the conscience." *Id.* "At the other end of the spectrum, it is generally agreed that Fourteenth Amendment liability will attach to conduct intended to injure in some way unjustifiable by any governmental interest." *Id.* An official's conduct will often lie between these two extremes, and determining whether that middle-range action is conscience shocking "is a matter for closer calls." *Lewis*, 523 U.S. at 834. In closer cases, the question becomes "whether the circumstances allowed the State actors time to fully consider the potential consequences of their conduct." *Caldwell*, 120 F. App'x at 574 (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 373 (9th Cir. 1998)). Thus, *Lewis* directs lower courts to carefully examine the circumstances that surround the official's conduct and the governmental interest at stake. 523 U.S. at 850-51.

"[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates the large concerns of the governors and the governed." *Ewolski*, 287 F.3d at 511. Instead, a plaintiff must show that the official acted with "deliberate indifference," which "requires the [] plaintiff to show that the state 'official knows of and disregards an excessive risk to [the plaintiff's] health or safety.'" *Id.* at 512 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). An official acting with deliberate indifference "must both 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

11

also draw that inference.'" *Id.* at 512 (quoting *Farmer*, 511 U.S. at 837). Upon drawing the inference, "the official must act or fail to act in a manner demonstrating reckless or callous indifference' toward the individual's right." *Id.*; *See also Hunt v. Sycamore Comm. Sch. Dist.*, 542 F.2d 529, 540 (6th Cir. 2008) (explaining that where officials have the opportunity for "reflection and unhurried judgments," they "could be liable upon a showing that they were subjectively aware of a substantial risk of harm to the plaintiff") (internal quotation omitted). "Because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, not a question of fact for the jury." *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005).

The parties have cited no Sixth Circuit § 1983 case directly on point. But other circuits have considered substantive due process claims based on official conduct in the course of police and fire personnel responding to non-emergency calls. In *Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996), Robert Hill was killed when an on-duty police officer "ran a red light and struck Hill's car." 93 F.3d at 419. The complaint in *Hill* alleged that the officer was speeding at the time of the collision and was not responding to an emergency. *Id.* Although it was after midnight, the officer did not activate his cruiser's headlights or emergency lights or the siren. *Id.* The *Hill* Plaintiffs alleged that the officer's conduct was reckless and deprived Hill of his substantive due process rights under the Fourteenth Amendment. *Id.* at 420-21. The district court denied a motion to dismiss the *Hill* complaint, and the Seventh Circuit reversed.

The Court of Appeals noted that "[n]ot every legally cognizable injury inflicted by a state employee acting under the color of law violates the Fourteenth Amendment." *Id.* at 421 (citing *Paul v. Davis*, 424 U.S. 693, 699 (1976)). The *Hill* plaintiffs' "conclusory allegation of

12

recklessness" was "insufficient to defeat a motion to dismiss." *Id.* (citing *Palda v. General Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)). In order to find a state actor reckless in a constitutional sense, his conduct must be criminally reckless or deliberately indifferent, which the Seventh Circuit described as a "proxy for intent." *Id.* As such, "it would not be enough even if plaintiffs in the case at bar had proved beyond dispute that [the officer], like any reasonable person, knew that driving at high speed at night without lights could have potentially fatal consequences" because "unintended loss of life resulting from a state employee's lack of due care does not implicate the due process clause." *Id.* (citing *Davidson v. Cannon*, 474 U.S. 344, 347 (1986)). The Seventh Circuit concluded that

> [m]otor vehicle accidents caused by public officials or employees do not rise to the threshold of a constitutional violation actionable under § 1983, absent a showing that the official knew an accident was imminent but consciously and culpably refused to prevent it. It is insufficient to show that a public official acted in the face of a recognizable but generic risk to the public at large.

*Id.* at 421-22 (internal citations and footnote omitted).

In *Green v. Post*, 574 F.3d 1294, 1296 (10th Cir. 2009), the Tenth Circuit reached a similar conclusion where a police officer was speeding without turning on his car's sirens or lights and proceeded through a yellow light in the course of a non-emergency call. The officer struck another car in the intersection, killing the driver of the vehicle. 574 F.3d at 1297. The Tenth Circuit held that the officer's conduct did not rise to the level of deliberate indifference, finding that "[w]hile it was surely negligent for [the officer] to speed through a yellow light in response to an official call which, while not an emergency, nonetheless required a rapid response, [the court could not] say it was more than that." *Id.* at 1303-04. In other words, the officer's conduct did "not demonstrate a degree of outrageousness and a magnitude of potential

13

or actual harm that [was] truly conscience shocking." *Id.* at 1304 (internal quotation omitted); *see also Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (finding no constitutional deprivation where police officer was speeding in a non-emergency situation and noting that, even if the officer's conduct constituted gross negligence, "it does not transform a state tort claim into a constitutional deprivation").

The Court finds these cases persuasive. Accepting the allegations of Plaintiff's Complaint as true, Losleben was speeding, failed to travel in a proper lane of traffic, failed to maintain a proper lookout, and did not yield the right of way. As a result, he lost control of the fire engine and crossed over the center line, striking the decedent's vehicle. Losleben was not responding to an emergency and knew as much. Even so, "unintended loss of life resulting from a state employee's lack of due care does not implicate the due process clause." *Shobe*, 93 F.3d at 421. The due process clause protects against only the most egregious conduct, and the Court cannot agree that Losleben's actions meet that high benchmark. The Complaint in this case does not allege that Losleben knew an accident was imminent but deliberately refused to avoid it. *See id.* at 421-22. Nor does Plaintiff allege that Losleben intentionally crossed the center line or that after crossing into the other lane, he continued in that lane of travel for a period of time during which he disregarded a risk to oncoming traffic. Plaintiff essentially alleges that the firefighter was speeding and failed to remain in a proper lane. That conduct may be compensable pursuant to state tort law. The Court does not find that it was so outrageous that Losleben violated the constitutional rights of Plaintiff's decedent. Although Losleben's conduct was the cause of a tragic accident, it is not conscience shocking in the constitutional sense.

Plaintiff seeks to avoid this result by relying on *Becerra v. Unified Government of Wyandotte County*, 272 F. Supp. 2d 1223 (D. Kan. 2003). In *Becerra*, the Kansas district court considered whether a firefighter's conduct violated substantive due process when he sped through a red light while responding to a non-emergency call and struck another car and killed the driver. 272 F. Supp. 2d at 1228-29. The complaint in *Becerra* alleged that the firefighter

> chose the route that he would follow to take him to his destination, including the route to and through the subject intersection, when such route was not necessary to accomplish the response goal; . . . knew that the call to which he was responding did not require him to drive the fire engine into the intersection, and through the red light, at high speed; . . . knew that his conduct in driving the fire engine into the intersection and through the red light at high speed created a significant risk and likelihood of serious injury and death to foreseeable motorists in the vicinity who might not be aware of the presence of the fire engine; . . . could see the red light for a significant distance as he approached the subject intersection, and had an opportunity to deliberate regarding his subsequent operation of the fire engine; . . . either failed to deliberate regarding his operation of the fire engine, or made deliberate decisions to place Becerra and other similarly-situated persons at significant risk and likelihood of serious injury and death; . . . [and] failed to slow the fire engine and, in fact, accelerated the fire engine into and through the intersection at high speed.

*Id.*

The district court in *Becerra* denied the defendants' motion to dismiss the § 1983 substantive due process claims. *Id.* at 1227. The district court held that the facts alleged in the complaint, which the district court characterized as reckless or deliberately indifferent under all of the circumstances, fell into the middle range of the substantive due process "culpability spectrum." *Id.* at 1229. The court specifically focused on the firefighter's opportunity to deliberate and concluded that the plaintiff's allegations, if proven, would "rise to the level of conduct that would shock the conscience and thus establish a violation of substantive due process under 42 U.S.C. § 1983." *Id.* at 1230-31.

The Court finds *Becerra* illustrative but distinguishable on its facts. Just as in *Becerra*, Plaintiff here alleged that Losleben was speeding and was not responding to an emergency call. Beyond these general similarities, the facts in *Becerra* differ from the facts alleged in this case in a number of important respects. The plaintiff in *Becerra* alleged that the firefighter chose to take a route through the intersection where the crash occurred even though it "was not necessary to accomplish the response goal." 272 F. Supp. 2d at 1231. Perhaps more importantly, the complaint alleged that the firefighter could see the impending red light "for a significant distance as he approached the subject intersection," allowing him time to deliberate regarding the appropriate action to take. *Id.* According to the plaintiff in *Becerra*, not only did the firefighter fail to slow the fire engine, he actually accelerated into and through the intersection. *Id.* By contrast, the Complaint here alleges that the crash occurred because Losleben crossed the center line while speeding on a narrow road. Plaintiff has not alleged that Losleben chose a particularly risky response route or that he contemplated the risk of crossing the center line but disregarded it. *Becerra* does not alter the Court's conclusion that Plaintiff has failed to state a substantive due process claim against the Estate of Losleben. Therefore, Defendant's Motion to Dismiss is **GRANTED** as to this issue.[1]

## IV. Intervenor Complaint

The only claim remaining before the Court are the allegations contained in the Intervenor Complaint filed by Stonetrust Commercial Insurance Company ("Stonetrust") and Maple Land and Timber, LLC ("Maple Land and Timber"). The Intervenor Complaint alleges that Plaintiff's

---

[1] The Court would add that even if Plaintiff's claim against Hardin County had been timely, the claim would have failed on the merits for the same reason that Plaintiff's claim against Losleben's estate fails, to wit, the Complaint's failure to allege a violation of the decedent's substantive due process rights.

decedent was an employee of Maple Land and Timber at the time of the fatal accident and that Stonetrust was then the workers compensation insurance carrier for Maple Land and Trust. Intervenor Compl. ¶¶ 8, 15. The Intervenor Plaintiffs assert a subrogation lien against any damages recovered by Plaintiff in this action. *Id.* ¶ 16, 19. The Intervenor Plaintiffs further allege their right to pursue any substantive claims against Defendants, should the Court hold that Plaintiff's underlying claims against the same Defendants are time barred. *Id*. ¶¶ 25-28. The Intervenor Complaint alleges that Stonetrust has the right under Tenn. Code Ann. § 50-6-112(d)(2) to pursue any untimely claims on behalf of Plaintiff. Defendants have filed a motion to dismiss the Intervenor Complaint, raising many of the same arguments they presented to support dismissal of Plaintiff's Complaint.

Having dismissed the only claims Plaintiff had before this Court, the Court hereby dismisses the Intevenor Complaint. The Intervenor Complaint's claim for subrogation and a right to reimbursement is moot because Plaintiff has failed to state a claim for relief under § 1983. Because Plaintiff can recover no damages in this Court, the Intervenor Plaintiffs have failed to state a claim for a lien on damages recovered by Plaintiff in this Court. Because Plaintiff's § 1983 claims against all Defendants fail on their merits and for reasons independent of the statute of limitations, the Intervenor Plaintiffs have failed to state a claim to pursue the claims under Tenn. Code Ann. § 50-6-112(d)(2). The Intervenor Complaint is dismissed without prejudice to the Intervenor Plaintiffs' right to pursue their rights as to the state law claims the Court has remanded to the Hardin County Circuit Court.

## CONCLUSION

Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's § 1983 claims are dismissed with prejudice. The Intervenor Complaint is likewise dismissed but without prejudice.

**IT IS SO ORDERED.**

                                            **s/ S. Thomas Anderson**
                                            S. THOMAS ANDERSON
                                            CHIEF UNITED STATES DISTRICT JUDGE

                                            Date: April 21, 2017.